This suit arises out of a collision which occurred on the night of December 19, 1945, between an automobile owned and driven by defendant C.P. Allen and an automobile owned by W.H. Gunby and driven by his son, William L. Gunby. As a result of the collision, the Gunby automobile was damaged in the alleged amount of $292.19. The Gunby automobile was covered by insurance issued by Bituminous Fire Marine Insurance Company, under the terms of which the insurer surer paid W.H. Gunby the sum of $242.19, being the full amount of damage claimed, less $50. The suit is by the insurer on its own behalf for the sum of $242.19, and for the benefit of its assured, W.H. Gunby, for the sum of $50, and is based on the allegations that the collision and resulting damage was wholly and entirely due to the gross negligence of the defendant, C.P. Allen, in six specific respects, to-wit: (1) In driving his automobile in his wrong lane of traffic; (2) in failing to pull over into his proper lane upon the approach of the Gunby automobile and the sounding of the horn thereon; (3) in failing to keep a proper lookout; (4) in failing to keep his automobile under proper control; (5) in failing to drive with proper care and proper concern for the other cars, and (6) in driving with more than one passenger on the front seat creating a condition preventing the defendant from having proper control.
The defendant, in his answer, denies that he was guilty of any negligence, and avers that should the Court find him guilty of any negligence, that the collision was contributorily caused by the negligence of William L. Gunby, the driver of W.H. Gunby's automobile, which contributory negligence was a proximate cause of the accident, and bars recovery herein.
After trial of the case the trial judge, without assigning written reasons, rendered judgment in favor of the defendant, dismissing *Page 879 
plaintiff's suit at its costs. Plaintiff has appealed.
It is shown by the evidence that at the time of the collision the plaintiff's car was occupied by young Gunby alone, as driver, and that the defendant's automobile was occupied by defendant Allen, as driver, with a Miss Day immediately to his right and a Mr. Robert Smith immediately to her right on the front seat, and four persons on the back seat, to-wit: Mr. and Mrs. Leo Hurst, Carl Courtney and John Allen Turnipseed. These occupants of the automobiles were the only eye witnesses to the collision, and it was shown that all of them, until a short time before the collision, had met at the Club Reo, situated on the outskirts of Jackson, and had all partaken of whiskey for some two or three hours.
W.L. Gunby, testifying for plaintiff, states that he was driving at a reasonable rate of speed, going uphill out of Jackson, in an easterly direction, and keeping to his right side of the highway and that as he was coming up the hill he noticed the defendant's car coming down the hill into Jackson and that "I looked up just in time to see we were going to hit. That is about all I can tell you." He states that he saw the lights of the Allen car at a distance of about 500 yards, but this is merely an approximation and probably inaccurate. The only definite part of his testimony is that he claims he was entirely on his right hand side when the collision occurred and that he was struck on the end of the "front left hand bumper, left hand wheel, and struck back rear fender." He admits that he did not blow his horn before the collision, as alleged in the petition, and with reference to the question as to whether or not he dimmed his lights, he states: "I am pretty sure the lights were already that way". He admits that the whole crowd was at Club Reo and that there was some drinking, and testifies that he cannot remember whether he was drinking or not. The fact remains that he was at this night club with the people involved in the collision, and others, for several hours and that the crowd was there for the purpose of drinking whiskey. He testifies that toward midnight he took some girls back to their home in Jackson, and that the collision occurred on his way back; that, in effect, he was driving to his extreme right and keeping his eyes on the side of the road and at the time of the collision he was on the right side of the road, but was not off the asphalt, and that from where the collision occurred he would say that the Allen automobile was in the center of the road. C.P. Allen, the defendant, testified that at the time of the collision he was returning with his party to Jackson, travelling on his side of the road and that as he was going down an incline and had reached about the middle of the incline, he saw the Gunby automobile and that as the Gunby automobile got in front of him, "he (Gunby) veered and tore my right wheel off, and come on down side the car." He testified that neither he nor Gunby dimmed their lights prior to the collision; that every one had been drinking at the Club Reo, including young Gunby, "but I don't say he was drunk." He admits that Gunby's car was on its proper side of the road as he approached it, but that as it got right in front of him, it veered to the right (apparently meaning Allen's right).
Leo Hurst testified that he was riding on the rear seat of the Allen automobile when the collision occurred, and he attributes the collision to the fact that both drivers were trying to hog the road. He, too, testified that all members of the party had been drinking.
Carl Courtney testified that on the night of the collision he and Smith and Turnipseed had been at Club Reo drinking and that they got a ride back with Allen; that he did not think anybody was drunk, but everybody had been drinking. He stated that he did not know anything about the collision, outside of the fact that it occurred and that he was riding in the rear seat of the Allen automobile.
Miss Evelyn Day testified that she was riding with Allen on the front seat, and that "As we were going around the curve at the top of the hill the other car lights were coming up and I told Clifton Allen that there was another car coming — for him to pull over some. He was 'kinda' in the middle of the road and he did. When the car was in front of us the lights blinded *Page 880 
me and the next thing I knew we hit." She states that "I think both were partly in the middle of the road."
Turnipseed testified that he was also riding in the back seat of the automobile; that he was intoxicated and that he knows nothing about the collision, except that it occurred.
The other eye witnesses to the collision, Mrs. Leo Hurst and Smith, did not testify.
The only other witnesses in the case were Mr. W.H. Gunby, the owner of the automobile driven by young Gunby, his son, who merely testified as to the damage to his automobile, and Mr. Joe Hurst who testified that he investigated the wreck after the collision; that he did not look for skid marks; that he found plenty of glass in the road and that "the glass was near the center of the road, a little back to the south side of the road;" there was no glass on the north side, and that "when they hit it was near the center of the road." (His opinion from observing the physical facts.)
It is apparent from a review of the testimony in this case that both drivers were guilty of negligence in that they had both been drinking and were driving under the influence of alcohol, and in that neither driver was keeping a proper lookout and both were obviously driving in the middle or too close to the middle of the road. The trial judge has not assigned any written reasons for his judgment, but it appears that he must have believed the testimony of Mr. Leo Hurst to the effect that the collision was caused by the fact that both drivers were trying to "hog" the road and that neither took the necessary precautions of pulling to his right.
[1, 2] The serious question in the case is whether or not the negligence of young Gunby, the driver of the Gunby automobile, can be imputed to his father, the owner of the automobile, and to his father's insurer. The defendant contends that his case rests chiefly on that paragraph in Meyer v. Rein, La. App.,18 So.2d 69, 70, where, in the syllabus thereof, it is stated: "In action for damages to plaintiff's automobile sustained in a collision, any negligence on part of the driver of plaintiff's automobile could not be relied upon to defeat plaintiff's claim in the absence of a plea of contributory negligence." Defendant herein contends that he has pleaded contributory negligence, but examination of this plea shows that the contributory negligence pleaded is on the part of young Gunby, who is not a party to the suit, and not on the part of his father, owner of the automobile, and his insurer, who are the plaintiffs herein. The negligence of young Gunby cannot be imputed to his father unless it is shown that he was operating the automobile on behalf of his father, as his agent or his employee. Such is not the case here, for obviously young Gunby, aged 22, had merely borrowed his father's automobile for his own personal pleasure. The rule of law existing in this State is correctly stated as "* * * the contributory negligence of one to whom an automobile is loaned by its owner and who is using it for his own pleasure or benefit is not imputable to the owner so as to prevent the latter's holding another liable for negligently injuring the car, unless the owner retains some direction or control over the action of the bailee." 5 Am.Jur., Par. 493, page 781. While it seems clear that the accident was caused by the concurrent negligence of the defendant and young Gunby, since the negligence of young Gunby cannot be imputed to the plaintiff herein, there should have been judgment in favor of plaintiff.
In so far as the question of the quantum is concerned, the amount alleged in the petition has been proved.
For these reasons assigned, it is ordered that the judgment appealed from be annulled, avoided and reversed, and accordingly, that there now be judgment in favor of the plaintiff, Bituminous Fire Marine Insurance Company, individually and against the defendant, C.P. Allen, in the full sum of $242.19 and further judgment herein in favor of the said plaintiff for the use and benefit of W.H. Gunby against the said defendant in the additional sum of $50, together with legal interest thereon from judicial demand, until paid, and all costs. *Page 881